1    CLIFF PALEFSKY (State Bar No. 77683)
     MCGUINN, HILLSMAN & PALEFSKY
2    535 Pacific Avenue
     San Francisco, CA  94133
3    (415) 421-9292
     uroy2@aol.com
4

5    MICHAEL RUBIN (State Bar No. 80618)
     REBEKAH B. EVENSON (State Bar No. 207825)
     ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
6    177 Post Street, Suite 300
     San Francisco, CA  94108
7    mrubin@altshulerberzon.com
     revenson@altshulerberzon.com
8

9    CHRISTINA DJERNAES (State Bar No. 177522)
     LAW OFFICE OF CHRISTINA DJERNAES
10   1214 De La Vina Street, Suite K
     Santa Barbara, CA  93101
11   (805) 685-8189
     christina@djernaeslaw.com
     Attorneys for Plaintiffs
12

13   NANCY L. ABELL (State Bar No. 88785)
     PAUL, HASTINGS, JANOFSKY & WALKER LLP
14   515 South Flower Street, Twenty-Fifth Floor
     Los Angeles, CA  90071-2228
15   Telephone:  (213) 683-6000
     nancyabell@paulhastings.com
     Attorneys for Defendant Oracle Corporation
16

17                 UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19

| | |
|---|---|
| 20   MICHEL DRISCOLL, an individual; BRIAN CONNELLY, an individual; on behalf of themselves and all others similarly situated, | CASE NO. C04-2390 |
| | **E-FILING** |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **JOINT NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL AND CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| ORACLE CORPORATION, a corporation, | |
| Defendant. | Date:       October 14, 2005 |
| | Time:       9:00 a.m. |
| | Courtroom: 10 |
| | Judge:     The Hon. Judge Susan Illston |

1

## TABLE OF CONTENTS

2   Notice of Motion and Motion ................................................................................................ 1

3   Memorandum of Points and Authorities .............................................................................. 2

4   Introduction ........................................................................................................................... 2

5   Procedural History and Background ..................................................................................... 4

6   Argument ............................................................................................................................... 5

7        I.      The Court Should Grant Final Approval of the Settlement ................................... 5

8                A.      The Terms of the Settlement Are Fair, Adequate
                         and Reasonable.......................................................................................... 6
9
                 B.      The Reaction of the Class Supports Approval
10                        of the Settlement ....................................................................................... 9

11               C.      The Parties Conducted Extensive Investigation and
                         Analysis and the Settlement Was Reached Through
12                        Arms-length Negotiations ......................................................................... 9

13               D.      Litigating this Action Would Be Complex, Expensive
                         and Time Consuming, and Would Delay Recovery ................................ 10
14
                 E.      The Recommendations of Experienced Counsel
15                        Favor Approval of the Settlement........................................................... 10

16       II.     The Court Should Grant Final Class Certification.............................................. 11

17               A.      Numerosity .............................................................................................. 11

18               B.      Commonality and Typicality................................................................... 12

19               C.      Adequacy of Representation ................................................................... 12

20               D.      Superiority................................................................................................ 13

21               E.      The Approved Notices and the Parties' Compliance
                         with the Notice Timetable Satisfied Due Process ................................... 13
22
         III.    The Court Should Certify this Action as a FLSA Collective Action ................. 15
23

24   Conclusion .......................................................................................................................... 16

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ballaris v. Wacker Silttronic Corp.*,
    2001 WL 1335809 (D.Or. 2001) ........................................................................ 16

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................................ 6, 10

*Daggett v. Blind Enterprises of Oregon, et al.*,
    1995 U.S. Dist. LEXIS 22465, No. 95-421-ST (D.Or. 1996) ............................ 16

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............ 6, 9, 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 6, 10, 12

*Hoffman v. Sbarro*,
    982 F. Supp. 249 (S.D.N.Y. 1997) .................................................................... 16

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................ 8

*M. Berenson Co., v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass 1987) .................................................................. 6, 10

*Officers for Justice v. Civil Serv. Commission*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 5, 6, 9

*In re Prudential Sec. Inc. Ltd Partnerships Litigation*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................ 5

*Realite v. Ark Restaurants Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) .................................................................. 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 6

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................ 6

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .............................................................................. 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FEDERAL STATUTES

29 U.S.C. §216(b)....................................................................................... 1, 15

Fed. R. Civ. P. 23.......................................................................................*passim*

## MISCELLANEOUS

*Manual for Complex Litigation,* Third §30.42 (1995) .............................. 6, 7, 11

*Manual for Complex Litigation,* Fourth, §21.312 ........................................... 14

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 14, 2005, at 9:00 a.m., or as soon thereafter as counsel may be heard, plaintiffs and defendant jointly will bring on for hearing their motion for Final Settlement Approval and Class Certification. The parties seek final settlement approval and class certification pursuant to Fed. R. Civ. P. 23(e) on the grounds that the settlement is fair, adequate and reasonable, and that the proposed classes meet all requirements of Fed. R. Civ. P. 23. The parties also seek certification of this action as a FLSA collective action on the grounds that the FLSA class meets all requirements of 29 U.S.C. §216(b).

This motion is based upon the accompanying memorandum of points and authorities, the declarations and exhibits cited therein, the complete files and records in this matter, and such other and further matters as may be called to the attention of the Court at or before the hearing.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

4        Plaintiffs and Defendant Oracle Corp. request that this Court grant final approval of the

5    parties' class action settlement agreement, certify the state law settlement classes, and certify this

6    action as a FLSA collective action at the upcoming October 14, 2005 Fairness Hearing.  Upon the

7    Court's final settlement approval, the settlement funds can be distributed to plaintiffs pursuant to

8    the terms of the Revised Settlement.

9        After this Court preliminarily approved the Settlement, the parties agreed to two

10   modifications to the agreement, both of which provide further protection to plaintiffs.  The parties

11   are filing a copy of a Revised Settlement Agreement in conjunction with this motion.

12       The first change to the Settlement Agreement adds 147 new plaintiffs and increases

13   several dozen other plaintiffs' settlement amounts.  Inquiries from plaintiffs revealed that 147

14   former employees had inadvertently been excluded from the original list of class members created

15   by Oracle.  Rubin Declaration in Support of Common Fund Attorneys' Fees (September 9, 2005)

16   ("Rubin Dec.") ¶19.  Those employees included individuals who had worked for Oracle Direct in

17   Miami, Florida and individuals who worked in certain DMD job titles within Oracle Direct, both

18   of which categories had different job codes from other class members.  The parties agreed to

19   include those individuals in the settlement, and to calculate the awards of the new plaintiffs in

20   accordance with the previously agreed-upon formulas, which are also set forth in the Revised

21   Settlement Agreement.  Rubin Declaration in Support of Final Settlement Approval ("Rubin

22   Supp. Dec.") ¶3; Abell Declaration in Support of Final Settlement Approval ("Abell Dec.") ¶3.

23   In addition, 66 other plaintiffs demonstrated that they were entitled to larger settlements than

24   originally calculated consistent wit the terms of the Revised Settlement Agreement.  Oracle

25   adjusted these plaintiffs' settlement amounts upward accordingly.  Abell Dec. ¶3; *see* Rubin Dec.

26

27

28

¶20.  As a result, the total number of plaintiffs has increased to 1,261, and the total value of the settlement fund has increased from $11,978,962 to $12,846,956.05, which includes the value of all class members' claims calculated under the formula set forth in the Revised Settlement Agreement (including interest accrued through September 30, 2005), plus the requested award of attorneys' fees and costs and the requested enhancements for the named plaintiffs.   Abell Dec. ¶3; *see* Revised Settlement Agreement  Exs. E-J.

The parties also agreed to make several non-substantive clarifying changes to certain language in ¶17 of the Settlement Agreement.  As revised, ¶17 now more accurately describes the calculations for determining average overtime, because the original Settlement Agreement did not precisely explain how the calculations for California plaintiffs differed from the calculations for other plaintiffs.  Abell Dec. ¶4; Revised Settlement Agreement ¶17.  The changes merely conform the Settlement Agreement to the actual calculation methodology used by the parties.

All of the individuals covered by this settlement have received a notice stating the precise amount of their settlement and how it was calculated (with interest calculated through the September 30, 2005, Fairness Hearing and accruing at 3% thereafter until paid).  Revised Settlement Agreement ¶8.  Notices were sent to the original class members at their last known addresses by June 17, 2005, and to the new class members by mid-August, 2005.  Abell Dec. ¶6.[1] In the past several months, several hundred class members sent plaintiffs' counsel updated addresses; plaintiffs' counsel located new addresses for hundreds of other plaintiffs who had moved but had not submitted updated addresses; and Oracle re-sent the notices to all of the updated addresses.  Abell Dec. ¶6; Rubin Dec. ¶23.

---

[1]  Because none of the 147 new plaintiffs are members of the California or Massachusetts classes, they have only FLSA opt-in claims and will not be bound by the Settlement unless they submit a Claim form and endorse a Settlement Check.  Revised Settlement Agreement ¶¶22, 25. Nonetheless, dozens of these new plaintiffs have already filed timely claims.  Abell Dec. ¶7.

The reaction of the class to the proposed settlement has been overwhelmingly positive. The September 20, 2005 deadline for opt outs and objections has passed. No objections have been received. Abell Dec. ¶7. Only two of the 1,261 plaintiffs have opted out: a current Oracle manager from California, and a former employee from Massachusetts who only worked a short time during the class period. *Id.* By contrast, 932 plaintiffs have already submitted claim forms (as of September 20, 2005), comprising approximately 75% of the eligible claimants. *Id.*

The parties fully expect that plaintiffs and class members will continue to submit claim forms in the coming weeks and months. Pursuant to the Settlement Agreement, plaintiffs are entitled to submit claims until 75 calendar days after the Settlement Effective Date. Because there have been no timely objections, the claims-filing deadline will be 75 days after the Court grants final approval to the settlement (which will be December 28, 2005, if the Court grants final approval on October 14, 2005). Revised Settlement Agreement ¶2(u). This deadline gives all plaintiffs ample time to submit claims, even if they have moved, and even if they were awaiting final court approval before deciding whether to submit a claim.

## PROCEDURAL HISTORY AND BACKGROUND

The procedural history of this action is more fully set forth in the parties' Joint Motion For Preliminary Settlement Approval and Plaintiffs' Motion for Common Fund Attorneys' Fees and Costs. Briefly, on June 16, 2004 Michel Driscoll and Brian Connelly, two former Oracle sales employees, filed a complaint against Oracle alleging that they and all similarly situated Oracle employees were misclassified by Oracle as exempt employees and that Oracle violated their state and federal statutory overtime rights by suffering or permitting them to work in excess of eight hours per day (in California) and/or 40 hours per week (nationally) without paying them an overtime premium. Oracle denies, and continues to deny, all allegations of wrongdoing.

For more than two years, the parties' counsel, who have extensive experience in complex

class action employment litigation and who have collectively handled numerous FLSA collective actions and overtime class action lawsuits, sorted through and analyzed the available data to develop an appropriate settlement scenario.  Rubin Dec. ¶5.  During that time, the parties negotiated a tolling agreement, effective June 19, 2003, that enabled them to continue negotiations without compromising any plaintiffs' claim (Revised Settlement Agreement at 2 n.1), and Oracle reclassified to non-exempt status all plaintiffs employed in job classifications covered by this settlement as of July 1, 2004 (Revised Settlement Agreement ¶34).

Ultimately, after more than two years of extensive negotiations, the parties reached a settlement on May 21, 2005.  This Court granted preliminary settlement approval on May 27, 2005.  Thereafter, the parties learned that some individuals had been inadvertently excluded from the class, and that the settlement calculations for some plaintiffs were understated.  The negotiations resumed, and as a result of these further negotiations, 147 new plaintiffs were added to the settlement, and the payments to plaintiffs increased by nearly seven hundred thousand dollars.  Abell Dec. ¶3.

## ARGUMENT

### I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation.  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To approve a proposed settlement of a class action under Fed. R.Civ. P. 23(e), the Court must find that the proposed Settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981). In exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass 1987); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); Manual for Complex Litigation, Third §30.42 (1995).

### A.    The Terms of the Settlement Are Fair, Adequate and Reasonable

The Settlement, which creates a $12,846,956.05 common fund for plaintiffs' benefit, is extremely beneficial to all parties and readily meets the standard for final approval.

Plaintiffs will receive settlement payments that are closely tailored to the facts and legal circumstances governing their individual cases without separately having to pay their own attorneys' fees, without having to prove up their claims individually, without having to participate

in depositions and other discovery, without waiting years for payment, and without facing the substantial risk of non-recovery (for example, if Oracle prevailed on its claim that any plaintiff who signed a release of claims in exchange for severance pay is barred from recovery, or that plaintiffs who received substantial monthly commissions are not covered by the overtime laws, or that some plaintiffs were properly classified as exempt).  To participate in the settlement, plaintiffs need only complete a one-page Claim Form with their name, address, and affirmation that they want to participate in the settlement.

Although all plaintiffs' overtime hours will be based on job-band averages, each plaintiff's individual recovery will also be specifically based upon that plaintiff's actual hourly rates, calculated under the applicable law (and thus reflecting commissions, bonuses, and other payments) during the relevant time periods.  Each plaintiff's recovery will also reflect the actual number of complete weeks worked during the covered period (excluding holiday and vacation weeks under the formulas set forth in the Revised Settlement Agreement), and will be based upon the overtime laws of the state where such plaintiff worked (unless there were no such applicable state laws – *i.e.*, in Virginia, Florida, or before the Massachusetts statute of limitations period – in which case the FLSA will govern).  *Id*.  No plaintiff will have to prove the hours that he or she actually worked or his or her regular rate of pay.  Revised Settlement Agreement ¶¶17, 18.  Instead, Oracle has provided that information from its payroll records.  Revised Settlement Agreement ¶14.  In addition to back wages, all plaintiffs are entitled to pre- and post-judgment interest, and most plaintiffs are also entitled to receive liquidated damages or penalties (unless they signed a release of claims).

If all class members submit timely claims, Oracle's total payment to plaintiffs will be $10,582,760.10, plus interest accruing at 3% from September 30, 2005 until paid.  The category-by-category breakdown of these amounts is set forth in Amended Exhibits E-J and ¶21 of the

Revised Settlement Agreement.  The average plaintiff's individual recovery is well over $8,000, and some plaintiffs will receive more than $45,000 (net of fees).

In addition, the parties have agreed that, in compensation for the named plaintiffs' efforts in obtaining and providing information and facilitating the settlement of this action, Oracle will separately pay $12,500 each to named plaintiffs Michel Driscoll and Brian Connelly.  Revised Settlement Agreement ¶20.  Michel Driscoll will also receive liquidated damages at the 40% rate for California plaintiffs, even though he in fact did sign a termination release.  *Id*.  Service or incentive payments to named plaintiffs are frequently awarded to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).  The service enhancements in this case are reasonable and reflect the considerable efforts by these individuals to gather information about themselves and their co-workers, to help analyze the various settlement scenarios, and to act as the "public face" of this litigation by volunteering to proceed as named plaintiffs.  Both plaintiffs worked extensively with plaintiffs' counsel to explain the facts and issues, respond to potential defenses, evaluate what is "fair" and "reasonable" for the class as a whole, and analyze the complicated sets of corporate procedures, personnel, and history underlying this case, without the benefit of formal discovery.  Rubin Supp. Dec. ¶5.  As a result of these two plaintiffs' efforts, the class members as a whole will benefit from substantially-enhanced financial recoveries.

Plaintiffs and defendant have also agreed to request court approval of statutory and common fund attorneys' fees and costs in the total amount of $2,239,195.95.  Revised Settlement Agreement ¶21.  Plaintiffs' counsel have filed a separate Motion for Common Fund Attorneys' Fees and Costs, which is also set for hearing on October 14, 2005.  The amount of attorneys' fees

and costs requested is in addition to the sums that individual plaintiffs are entitled to receive; and no plaintiffs' recovery under the settlement calculations set forth in the Revised Settlement Agreement will be reduced by these fees.  The requested amount (which includes cost reimbursements) is less than 17.43% of the total payment that would be made if all plaintiffs file timely claims, far below the Ninth Circuit's 25% benchmark for awards of attorneys' fees in common fund cases.

**B.      The Reaction of the Class Supports Approval of the Settlement**

Notice has been sent to all 1,261 plaintiffs.  Not a single one of those plaintiffs has filed an objection, and only two plaintiffs have opted out.  Abell Dec. ¶7.  932 plaintiffs have affirmatively opted to participate in the settlement by filing claim forms, and the parties expect hundreds of additional plaintiffs to submit claim forms in the coming months (the deadline for submitting claim forms is not until 75 days after the Settlement Effective Date).  This indicates overwhelming support for the settlement and strongly favors its approval.  *See Officers for Justice*, 688 F.2d at 625; *Ellis*, 87 F.R.D. at 18.

**C.      The Parties Conducted Extensive Investigation and Analysis and the Settlement Was Reached Through Arms-Length Negotiations**

The parties and their counsel engaged in extensive fact-gathering and informal discovery over the two-year period preceding settlement.  During this process, which is described in more detail in Rubin's Dec. ¶¶5-15, Oracle produced CDs and other materials containing thousands of pages of confidential data, which included not only the raw data applicable to the individual plaintiffs but also dozens of charts, graphs, and tables, that broke down the data by different categories.  The parties analyzed that data at great length, and plaintiffs drew up two complete sets of settlement documents using different settlement methodologies that were ultimately rejected, before the parties finally came to agreement on this settlement.  Even after reaching settlement, plaintiffs' counsel pursued the data verification procedures set forth in the settlement

agreement, employed an expert consultant to review all of Oracle's data, and affirmatively identified and negotiated the inclusion of 147 additional class members and higher settlement amounts for 66 others. *Id.*

The Revised Settlement Agreement is the product of extensive arm's-length negotiations by counsel with significant experience and expertise in employment class action litigation. Plaintiffs' counsel were in an excellent position to evaluate the reasonableness of the settlement as a result of their extensive investigation in this action and their experience in other similar wage and hour actions. Rubin Dec. ¶¶5-8, 28, 30.

### D.     Litigating this Action Would Be Complex, Expensive and Time Consuming, and Would Delay Recovery

As the Revised Settlement Agreement demonstrates, this action involved numerous categories of overtime claims under several state statutory schemes plus the federal FLSA. Litigating these claims, which arose over a period of five years between June 19, 1999 (California) and July 1, 2004 (when Oracle re-classified plaintiffs), would require substantial and expensive discovery and pre-trial motions, and would ultimately involve the deposition and preparation of numerous witnesses (including expert witnesses), as well as the consideration, preparation and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. Counsel for plaintiffs estimate that if this case had not settled, they would spend thousands of hours, and hundreds of thousands of dollars on discovery alone. Rubin Dec. ¶27.

In contrast, the settlement will yield a prompt, certain, and very substantial recovery for the class. Such result will benefit the parties and the court system.

### E.     The Recommendations of Experienced Counsel Favor Approval of the Settlement

The judgment of experienced counsel regarding the settlement is entitled to great weight.

---

JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND CLASS CERTIFICATION;
CASE NO. 3-04-CV-02390 SI                                                                    10

*Boyd*, 485 F.Supp. at 622; *Hanlon,* 150 F.3d at 1026; *M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18; Manual for Complex Litigation, Third §30.42 (1995).  Plaintiffs' counsel and defense counsel, who are well known for their experience and success in litigating complex wage and hour actions, fully support the settlement.  Rubin Dec. ¶13; Abell Dec. ¶2.  The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the settlement.

## II.      THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION

Plaintiffs seek approval of two Settlement Classes defined to include:

> All current or former employees who work or worked for Oracle Direct (formerly Internet Sales Division) in a Covered Job Code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 1999 and before July 1, 2004 in California ("California Class") (Settlement Agreement ¶2(a)); and

> All current or former employees who work or worked for Oracle Direct (formerly Internet Sales Division) in a Covered Job Code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 2001 and before July 1, 2004 in Massachusetts ("Massachusetts Class") (Settlement Agreement ¶2(b)).

For purposes of this motion, the parties agree that these classes sufficiently meet all the Rule 23 requirements and warrant the Court's certification.  Oracle has reserved its right later to dispute class certification if for any reason this Revised Settlement Agreement is not finally approved.

### A.      <u>Numerosity</u>

The numerosity requirement is met if "the class is so large that joiner of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Oracle's employee and payroll files show that there are 662 members of the California Class and 363 members of the Massachusetts Class, which satisfies the numerosity requirement.  Abell Dec. ¶5.

### B.   <u>Commonality and Typicality</u>

A class meets the commonality prerequisite "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). This rule is to be construed permissibly. "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like commonality, the typicality requirement is construed liberally and is satisfied if the class representatives have claims that are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Under the facts of this case, commonality and typicality are satisfied because all of the plaintiffs' claims are derived from the same source – Oracle's alleged misclassification of class members as exempt employees under pertinent state and federal wage and hour laws, and Oracle's alleged failure to pay required overtime compensation. The only significant difference is that the claims of plaintiffs who worked in Massachusetts are governed by Massachusetts law and the claims of plaintiffs who worked in California are governed by California law. This difference has been addressed by creating separate classes for Massachusetts plaintiffs and California plaintiffs, and applying the corresponding state law to calculate the damages of members of each class.

### C.   <u>Adequacy of Representation</u>

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." To determine the adequacy of representation, a court must consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). In this case, the named plaintiffs and class counsel have no

conflicts with the class, and have provided excellent representation to the class throughout this litigation, including in obtaining a highly favorable settlement.

### D.    Superiority

Finally, if all the requirements of Rule 23(a) are met, class certification is appropriate if it also meets the requirements of Rule 23(b)(1), (2), or (3).  Here, the class meets the requirements of Rule 23(b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  As set forth above, the common questions predominate, since the claims of the members of each class have the same legal and factual bases.  The superiority of a class action in this case to a multiplicity of individual and duplicative proceedings is also readily apparent.  If each plaintiff were required to litigate his or her case separately, the courts would be tasked with resolving hundreds of individual cases, and Oracle with defending the same number of cases.  Moreover, the cost of litigating the claims might deter some class members who have valid claims from pursuing them.  The interests of the plaintiffs, defendant and the Court are therefore best served by resolving this matter on a classwide basis.

### E.    The Approved Notices and the Parties' Compliance With the Notice Timetable Satisfied Due Process

Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement."  Oracle sent two separate Court-approved notices to plaintiffs.  The Mailed Notice (Revised Settlement Agreement Ex. B) provides information about all relevant terms of the settlement, including how to file a claim, opt out, or object, and also provides each plaintiff with an individualized accounting of the amount due to that plaintiff under the settlement.  Revised Settlement Agreement ¶8 & Ex. B.  The E-Mailed Notice (Revised Settlement Agreement Ex. C) included the general information included

in the Mailed Notice, but did not include individualized settlement amounts.  Revised Settlement

Agreement ¶7.  The *Manual for Complex Litigation, Fourth*, §21.312 sets forth a series of

requirements for a notice of a proposed class settlement, all of which were met here: the notices

define the classes, describe the options open to class members and the deadlines for taking action,

describe the essential terms of the proposed settlement, disclose the proposed payments to the

class representatives, provide information regarding attorneys' fees, indicate the time and place of

the Fairness Hearing, describe the methods of filing objections and opting out of the settlement,

explain the allocation of settlement funds, provide information to enable class members to

calculate their individual recoveries, and prominently display the address, phone number and web

address of class counsel.  The notices sent to plaintiffs therefore provided sufficient information

to allow class members to evaluate the proposed settlement and to make an informed decision

about whether to opt out or object well in advance of the Fairness Hearing.

Moreover, the method of giving notice was appropriate.  On June 17, 2005, Oracle

emailed the E-Mailed Notice to all plaintiffs who are current employees.  Abell Dec. ¶6.  That

same day, Oracle also sent the Mailed Notices to all of the original plaintiffs by certified mail,

return receipt requested.  Abell Dec. ¶6.  In cases where the "return receipt" was not completed

by the plaintiff, Oracle re-sent the notice by regular mail.  Abell Dec. ¶6.  The mailed notice was

sent to the 147 new class members in August 2005 by certified mail, return receipt requested.

Whenever Oracle learned that Mailed Notices had not been delivered, it informed

plaintiffs' counsel and sent an email version of the Mailed Notice to those plaintiffs currently

employed by Oracle.  Abell Dec. ¶6.  Upon learning of undeliverable notices, plaintiffs' counsel

searched for correct addresses by conducting computerized "skip tracing," and by communicating

directly with class members.  Rubin Dec. ¶23.  As a result of these efforts, plaintiffs' counsel

were able to locate current addresses for nearly 500 class members who had moved since working

at Oracle.  Rubin Dec. ¶23.  Oracle promptly re-sent the Mailed Notice to each of those individuals.  Abell Dec. ¶6.

The Settlement Agreement also provides that Oracle will send "Reminder Notices" to any plaintiff who has not filed a Claim within 30 days after the Settlement Effective Date.  Revised Settlement Agreement ¶28.  The Reminder Notice will include all the information from the Mailed Notice, and will also remind the plaintiff of the deadline for submitting a Claim.  *Id.*  As with the Mailed Notice, Oracle will inform plaintiffs' counsel if any Reminder Notice is not delivered, and will email a Reminder Notice to those plaintiffs who are currently employed by Oracle.  Plaintiffs' counsel may try to locate the plaintiff by performing "skip tracing" at plaintiffs' counsels' own expense.  *Id.*

### III.   THE COURT SHOULD CERTIFY THIS ACTION AS A FLSA COLLECTIVE ACTION

In addition to seeking certification of the Massachusetts and California classes, the parties seek certification of this action as a FLSA collective action on behalf of the following group of individuals:  "All current or former employees who work or worked for Oracle Direct (formerly Internet Sales Division) in a covered job code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 2000 and before July 1, 2004 at an Oracle Direct work location in California, Massachusetts, Virginia, or Florida.  Revised Settlement Agreement ¶3.

The FLSA entitles workers such as plaintiffs to sue collectively on behalf of themselves and others "similarly situated" for unpaid overtime premiums.  29 U.S.C. § 216(b).  Unlike a class action under Fed. R. Civ. Proc. 23, in which individuals are members of a class until they affirmatively "opt-out," each individual member of an FLSA collective action must affirmatively "opt-in" by filing a written consent to become a party plaintiff.  *Id.*  The requirements for finding that others are similarly situated for purposes of a collective action are less stringent than the

JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND CLASS CERTIFICATION;
CASE NO. 3-04-CV-02390 SI                                                                               15

requirements for certifying a class action under Fed. R. Civ. P. 23. *Ballaris v. Wacker Silttronic Corp.*, 2001 WL 1335809 at *1-2 (D.Or. 2001); *Daggett v. Blind Enterprises of Oregon, et al.*, 1996 U.S. Dist. LEXIS 22465, No. 95-421-ST p. 9 (D.Or. 1996). Plaintiffs meet their burden of demonstrating that they are similarly situated "by making a *modest* factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (quoting *Hoffman v. Sbarro*, 982 F.Supp. 249 (S.D.N.Y. 1997)) (emphasis added). "The positions and claims of the employees need not be identical." *Daggett*, 1996 U.S. Dist. LEXIS 22465 *17; *Ballaris*, 2001 WL 1335809 *3.

As set forth *supra*, there is ample evidence that all plaintiffs' claims share the same factual basis and meet the commonality and typicality requirements under Rule 23. These same factors demonstrate that plaintiffs are "similarly situated" for purposes of a FLSA collective action, and certification of this action as a collective action is therefore appropriate.

## CONCLUSION

For the reasons stated, the parties respectfully request that this Court grant their Joint Motion for Final Settlement Approval and Class Certification.

DATED:          September 23, 2005          Respectfully submitted:


                                            /s/
                                  _____
                                            Michael Rubin,
                                            Attorneys for Plaintiffs

                                  MICHAEL RUBIN (State Bar No. 80618)
                                  REBEKAH B. EVENSON (State Bar No. 207825)
                                  ALTSHULER, BERZON, NUSSBAUM,
                                      RUBIN & DEMAIN
                                  177 Post Street, Suite 300
                                  San Francisco, CA 94108
                                  (415) 421-7151

1

2         CLIFF PALEFSKY (State Bar No. 77683)
         MCGUINN, HILLSMAN & PALEFSKY

3         535 Pacific Avenue
         San Francisco, CA  94133

4         (415) 421-9292

5

6         CHRISTINA DJERNAES (State Bar No. 177522)
         LAW OFFICE OF CHRISTINA DJERNAES1215 De La

7         Vina Street, Suite K
         Santa Barbara, CA  93101

8         (805) 685-8189

9

10

11

DATED:   September 23, 2005      /s/

12           Nancy L. Abell,
           Attorneys for Defendant

13

14         NANCY L. ABELL (State Bar No. 88785)
         PAUL, HASTINGS, JANOFSKY & WALKER, LLP

15         515 South Flower St., 25th Floor
         Los Angeles, CA 90071

16         (213) 683-6000

17

18

19

20

21

22

23

24

25

26

27

28