1  CLIFF PALEFSKY (State Bar No. 77683)
   MCGUINN, HILLSMAN & PALEFSKY
2  535 Pacific Avenue
   San Francisco, CA  94133
3  (415) 421-9292

4  MICHAEL RUBIN (State Bar No. 80618)
   LAURA P. JURAN (State Bar No. 199978)
5  REBEKAH B. EVENSON (State Bar No. 207825)
   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
6  177 Post Street, Suite 300
   San Francisco, CA  94108
7  (415) 421-7151

8  CHRISTINA DJERNAES (State Bar No. 177522)
   LAW OFFICES OF CHRISTINA DJERNAES
9  1214 De La Vina Street, Suite K
   Santa Barbara, CA  93101
10 (805) 685-8189

11 Attorneys for Plaintiffs

12

13 NANCY L. ABELL (State Bar No. 88785)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
14 515 South Flower Street
   Twenty-Fifth Floor
15 Los Angeles, CA  90071-2228
   Telephone:  (213) 683-6000

16 Attorneys for Defendant Oracle Corporation

17
                    UNITED STATES DISTRICT COURT
18
                  NORTHERN DISTRICT OF CALIFORNIA
19

20 MICHEL DRISCOLL, an individual;          CASE NO. 3-04-CV-02390 SI
   BRIAN CONNELLY, an individual; on
21 behalf of themselves and all others      **CLASS ACTION**
   similarly situated,
22
                    Plaintiffs,            **REVISED STIPULATION AND
23                                         SETTLEMENT AGREEMENT**
        vs.
24
   ORACLE CORPORATION, a                    Date:    October 14, 2005
25 corporation;                             Time:    9:00 a.m.
                                            Courtroom 10
26                  Defendant.
                                            The Hon. Judge Susan Illston
27

28

# TABLE OF CONTENTS

**Page**

STIPULATION AND SETTLEMENT AGREEMENT ...................................................... 1

DEFINITIONS ........................................................................................................ 3

1.     Definitions ...........................................................................................................      3

SETTLEMENT CLASSES ....................................................................................... 9

2.     State Settlement Classes ............................................................................. 9

3.     FLSA Collective Action ............................................................................. 9

4.     Preliminary Settlement Approval ............................................................. 10

5.     Negotiate in Good Faith ............................................................................ 11

6.     Best Efforts ................................................................................................ 11

NOTICE .................................................................................................................. 11

7.     E-Mailed Notice ........................................................................................ 11

8.     Mailed Notice ............................................................................................ 12

9.     Costs of Notice .......................................................................................... 12

10.    Follow-Up Regarding Returned or Otherwise Undelivered Notices ...................... 13

11.    Notice Satisfies Due Process ..................................................................... 13

AGGREGATE TOTALS AND INDIVIDUAL CLAIMS ............................................. 13

12.    Settlement Tables ...................................................................................... 13

13.    Payment Upon Claims Being Made .......................................................... 14

SETTLEMENT DATA REVIEW AND VERIFICATION ............................................ 15

14.    Data Review and Verification .................................................................. 15

15.    Correction of Certain Data ....................................................................... 16

16.    Withdrawal From Settlement Agreement .................................................. 16

SETTLEMENT CALCULATIONS ........................................................................... 17

17.    Determination of Average Weekly Overtime Hours ................................. 17

       a.     General Methodology ...................................................................... 17

       b.     Calculating the Adjusted Daily Hours Worked .......................... 18

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3

   i.  Weekly Overtime Hours ................................................................. 18

4

   ii.  Daily Overtime Hours ................................................................. 19

5

  c.  The Average Weekly Overtime Hours Calculations:  ................................ 19

   i.  Job Category Averages ................................................................. 19

6

   ii.  Calculations for California Plaintiffs ............................................. 20

7

   iii.  Calculations for Massachusetts and Virginia/Florida Plaintiffs ...... 20

8

18.  Calculation of Back Wages Portion of Settlement ................................................. 21

9

19.  Calculation of Settlements: State-Specific ........................................................... 23

10

  a.  California Plaintiffs ........................................................................... 23

  b.  Massachusetts Plaintiffs ..................................................................... 24

11

  c.  Virginia/Florida Plaintiffs .................................................................. 26

12

20.  Enhancements to Representative Plaintiffs ........................................................... 27

13

ATTORNEYS' FEES AND COSTS .............................................................................. 28

14

21.  Attorneys' Fees and Costs ................................................................................. 28

15

RELEASES ............................................................................................................... 29

16

22.  Release of Oracle ............................................................................................ 29

17

23.  Set-Off of Settlement Amounts .......................................................................... 30

18

CLAIMS PROCESS ................................................................................................... 31

19

24.  Claims Payments ............................................................................................ 31

20

25.  FLSA Consents to Sue ..................................................................................... 31

21

26.  Claims Payment Verification ............................................................................. 31

22

27.  Periodic Notification of Check Cashing ............................................................... 31

23

28.  Follow-Up Regarding Plaintiffs Who Have Not Filed Claims ................................. 32

24

29.  Uncashed Settlement Checks ............................................................................. 32

25

30.  Costs of Settlement Administration ..................................................................... 32

26

31.  Tax Obligations .............................................................................................. 33

27

28

1

## TABLE OF CONTENTS
### (continued)

2

**Page**

3    OBJECTION AND OPT-OUT PROCEDURES ............................................................... 33

4    32.    Objection Procedure ........................................................................... 33

5    33.    Opt-Out Procedure .............................................................................. 34

6    RECLASSIFICATION .......................................................................................... 34

7    34.    Reclassification ................................................................................... 34

8    MISCELLANEOUS ............................................................................................. 35

9    35.    Media Contacts ................................................................................... 35

10   36.    No Admissions .................................................................................... 35

11   37.    Counterpart Execution ........................................................................ 35

12   38.    Entire Settlement Agreement .............................................................. 36

13   39.    Binding Upon Successors .................................................................... 36

14   40.    Jointly Drafted .................................................................................... 36

15   41.    Applicable Law ................................................................................... 36

16   42.    Retention of Jurisdiction ..................................................................... 36

17   43.    Invalid without Court Approval ........................................................... 36

18   44.    Inapplicability of California Civil Code §384 ..................................... 36

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STIPULATION AND SETTLEMENT AGREEMENT

*Michel Driscoll et al. v. Oracle Corp.*, No. 04-2390 SI (N.D. Cal.)

Subject to the approval of the United States District Court for the Northern District of California ("Court"), and pursuant to Rules 23(a) and 23(e) of the Federal Rules of Civil Procedure, California and Massachusetts state law, and the federal Fair Labor Standards Act ("FLSA"), as applicable, the parties hereby agree to the following Revised Stipulation and Settlement Agreement (the "Settlement Agreement" or the "Settlement").[1]

WHEREAS, on or about June 16, 2004, Michel Driscoll ("Driscoll") and Brian Connelly ("Connelly") (collectively "Representative Plaintiffs") filed a Complaint against Oracle Corporation ("Oracle") in the United States District Court for the Northern District of California (the "Court Action") on behalf of themselves and other Plaintiffs (defined below), alleging, *inter alia*, that Plaintiffs were not paid required overtime premiums in violation of state and federal law; and

WHEREAS, Oracle denies that it misclassified any employee, engaged in any unlawful conduct, or owes damages of any nature to Plaintiffs or anyone; and

WHEREAS, on or about July 1, 2004, Oracle re-classified all Plaintiffs then employed by Oracle as non-exempt employees and asserts that it thereafter began paying overtime premiums to Plaintiffs in accordance with applicable federal and state law; and

WHEREAS, counsel for all parties vigorously pursued their positions and the

---

[1] This Revised Settlement Agreement and the revised Exhibits attached hereto supercede the Agreement and Exhibits executed by the parties on or about May 21, 2005 and presented to the Court on May 27, 2005.  This Revised Settlement clarifies language in ¶17 to conform to the parties' intent and calculation methodology, and makes other changes to reflect the inclusion of additional plaintiffs and settlement amounts and additional attorneys' fees to plaintiffs' counsel.

rights of their clients through extended legal and factual analysis, informal discovery, exchanges of information, and good faith, arms-length negotiations extending over a two-year period; and

WHEREAS, counsel for all parties negotiated a series of Tolling Agreements (defined below),[2] which tolled the statute of limitations as of June 19, 2003 on all state and federal law claims pertaining to Oracle's alleged misclassification of Plaintiffs as exempt employees and its alleged failure to pay overtime premiums to Plaintiffs; and

WHEREAS, Plaintiffs' Counsel, acting in the best interests of the Representative Plaintiffs and all Plaintiffs, wish to resolve this matter in a fair and cost-effective method that benefits the Representative Plaintiffs and all Plaintiffs without the expense, delay, diversion and risk of protracted and complex litigation; and

WHEREAS, Oracle desires to avoid the expense, burdens, diversion and risk of protracted litigation and wishes to put to rest all controversy between Plaintiffs and Oracle relating to wage and hour compliance matters;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED among the parties, through their attorneys, subject to the approval of the Court, that the Court Action shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

---

[2] The parties tolled the limitations period from June 19, 2003 to the Settlement Effective Date with respect to the claims alleged in the Court Action by the Representative Plaintiffs and a putative class of current and former Inside Sales Representatives and Internet Response Representatives of Oracle's Internet Sales Division (which became Oracle Direct).  The Tolling Agreement did not toll the limitations period with respect to any other claims, individuals or putative class members.

1

## **DEFINITIONS**

2

3      1.      <u>Definitions</u>.  For purposes of this Settlement Agreement, the following

4   definitions shall apply, in addition to the definitions set forth in later paragraphs of this

5   Settlement Agreement:

6

7      a.      "Court Action" shall mean the action entitled *Michel Driscoll et al. v.*

8   *Oracle, Inc.*, Case No. C-04-2390 SI, filed on or about June 16, 2004 in the United States

9   District Court for the Northern District of California.

10     b.      "Representative Plaintiffs" shall mean Michel Driscoll and Brian

11  Connelly.

12     c.      "Plaintiffs" shall mean all current or former employees who work or

13  worked for Oracle Direct (formerly Internet Sales Division) ("Oracle Direct") in a job

14  code within Oracle Direct that is listed on Exhibit A ("Covered Job Code"), as revised,

15  providing in-house sales and customer pre-sales service to existing or potential Oracle

16  customers at any time on or after June 19, 1999 and before July 1, 2004 in California, or

17  at any time on or after June 19, 2000 and before July 1, 2004 in Massachusetts, or at any

18  time on or after June 19, 2000 and before July 1, 2004 in Virginia or Florida.[3]  For

19  purposes of this Settlement, each Plaintiff may also be included in one or more the

20  following subgroups, depending on whether he or she worked in more than one State

21  during the Covered Period (defined below) and whether he or she Opts In as an FLSA

22  Plaintiff to the Court Action:

23

24

25

---

26  [3] This settlement covers two employees who were physically stationed in New York,
Employee ID numbers 21852 and 45312, and 84 employees who were physically
27  stationed in Florida during a portion of the period between June 19, 2000 and July 1,
2004.  Those employees are treated for all purposes in this Settlement as if they were
28  "Virginia/Florida" Plaintiffs as defined in paragraph 1.c.iii.

REVISED STIPULATION AND SETTLEMENT
AGREEMENT
NO. 3-04-CV-02390 SI

i.      "California Plaintiffs" shall mean all Plaintiffs employed by Oracle Direct (in a Covered Job Code) in the State of California at any time on or after June 19, 1999 and before July 1, 2004.

ii.      "Massachusetts Plaintiffs" shall mean all Plaintiffs employed by Oracle Direct (in a Covered Job Code) in the Commonwealth of Massachusetts at any time on or after June 19, 2000 and before July 1, 2004.

iii.      "Virginia/Florida Plaintiffs" shall mean all Plaintiffs employed by Oracle Direct (in a Covered Job Code) in the Commonwealth of Virginia or Florida at any time on or after June 19, 2000 and before July 1, 2004. (Virginia/Florida Plaintiffs are not members of a state law class with respect to the periods of time they were employed in Virginia or Florida during the Covered Period; they have federal FLSA claims only.)

iv.      "FLSA Plaintiffs" shall mean all Plaintiffs employed by Oracle Direct (in a Covered Job Code) at any time on or after June 19, 2000 and before July 1, 2004 who Opt In to the Court Action either by filing a Consent to Sue in the Court Action or by endorsing and depositing a Settlement Check that includes a payment for FLSA Liquidated Damages, as set forth below.

d.      "Oracle" shall mean defendant Oracle Corporation and all of its predecessor, successor, related and affiliated entities.

e.      "Parties" shall mean Plaintiffs and Oracle.

f.      "Plaintiffs' Counsel" shall mean the law firms of Altshuler, Berzon, Nussbaum, Rubin & Demain, 177 Post Street, Suite 300, San Francisco, California 94108, (415) 421-7151; McGuinn, Hillsman & Palefsky, 535 Pacific Avenue, San Francisco,

-4-

California, 94133, (415) 421-9292; and the Law Office of Christina Djernaes, 1215 De La Vina Street, Suite K, Santa Barbara, California 93101, (805) 685-8189.

g.     "Covered Period" shall mean the period of time for which Back Wages (defined below) are available to Plaintiffs pursuant to this settlement.  For all FLSA claims, the Covered Period shall be June 19, 2000 through June 30, 2004.  For all California state law claims, the Covered Period shall be June 19, 1999 through June 30, 2004.  For all Massachusetts state law claims, the Covered Period shall be June 19, 2001 through June 30, 2004.  There are no separate Virginia/Florida state law claims.

h.     " Job Category" or "Job Categories" shall mean the three general job descriptions used by Oracle Direct to characterize the work performed by Plaintiffs during the Covered Period, which are: Internet Sales Representatives (Job Codes 5440, 5441, 5442, 6910, 6920, 6930, 20220, 71100, 71101, 91198, 91199, 91200, 91410, 91420, and 91430); Internet Response Representatives (Job Codes 35300, 35320, 35330, 71103, 91400, 91401, and 91403); and All Others (Job Codes 10270 (and its successor 14110), 10271 (and its successor 14111), 91164, 91168, and 92280).  For purposes of calculating hours worked in full weeks of sign-in/sign-out data under this Settlement, if a Plaintiff worked in two different Job Categories during a given week in the Covered Period, that Plaintiff shall be deemed to be in the Job Category in which he or she ended that week of employment, and if a Plaintiff worked in two different States during a given week in the Covered Period, that Plaintiff shall be deemed to be in the State in which he or she ended that week of employment.  For purposes of calculating settlement payments under this Settlement, if a Plaintiff worked in two different Job Categories or States during a given week in the Covered Period, that Plaintiff's payment shall be based ratably on the actual Job Categories and States in which Plaintiff performed covered work that week of employment.  A Plaintiff based in one State who was temporarily assigned to work in another State shall be deemed to have been employed in the State where he or she was based.  The Job Categories used by Oracle to calculate Plaintiffs' settlement amounts shall

-5-

be the actual Job Categories contemporaneously used by Oracle.  No Plaintiff's Job Category for previous periods of employment will be reclassified by Oracle for purposes of implementing this Settlement.

i.      "Claim" shall mean a written request by a Plaintiff to be paid the amount due and owing to that Plaintiff pursuant to this Settlement Agreement, such Claim to be submitted in substantially in the form attached hereto as Exhibit C (Mailed Notice and Claim Form).  A claim is "timely and valid" for purposes of this Settlement if it is submitted within the time period specified in ¶13 and if it is signed and substantially in the form attached hereto as Exhibit B.

j.      "Work Week" shall mean the seven-day period beginning at 12:01 a.m. on a Monday and ending at midnight on the following Sunday, in which a Plaintiff performed full-time or part-time work for Oracle Direct in a Covered Job Code in the Covered Period.

k.      "Full Week" shall mean a Work Week in which a Plaintiff worked at least five work days for Oracle Direct, with such Plaintiff's actual vacation days, holidays, and unpaid leave days not counting as days worked during such Work Week.

l.      "Reliable Full Week Data" shall mean the data obtained from Oracle's telephone sign-in/sign-out records, for each Full Week worked by a Plaintiff in a Covered Job Code in California between June 19, 1999 and June 30, 2004, and in Massachusetts and Virginia/Florida between June 19, 2001 and June 30, 2004, in which Oracle has five week days of actual (rather than an automatic, *e.g.*, 12:01 a.m.) sign-in and sign-off data; but

i.      Excluding all days that did not have both a sign-in and sign-off time;

ii.     Excluding all days on which the last sign-off time preceded or was identical to the first sign-in time; and

iii.     Excluding other data that the parties deemed unreliable.

For purposes of this paragraph, Oracle shall not be deemed to have "actual data" available for any Plaintiff's work day in which Oracle did not have data showing separate, non-automatic, sign-in and subsequent sign-off times (because there were automatic sign-ins or sign-offs under the telephone system then in use).

m.     "Regular Hourly Rate" shall mean a Plaintiff's base hourly wage rate for purposes of calculating his or her overtime premium under applicable state or federal law, taking into account base salary, bonuses, commissions, and any other amounts required to be included in the Regular Hourly Rate under applicable law.

n.     "Termination Release" shall mean a written release, executed by a Plaintiff on or before June 16, 2004 in conjunction with, upon, or following the termination of his or her employment with Oracle, which contains a general release or a release encompassing any claim to unpaid overtime wages that such Plaintiff may have had against Oracle during all or part of the Covered Period.  The Parties dispute the legal enforceability of any such Termination Release with respect to Plaintiffs' statutory overtime claims, but agree to resolve that dispute for purposes of this Settlement by eliminating the Liquidated Damages that would otherwise be available for a Plaintiff who executed a Termination Release, as further set forth herein.

o.     "Back Wages" shall mean the portion of any settlement payment to a Plaintiff that is designated in this Settlement Agreement as representing back wages under applicable state or federal law and is calculated in accordance with the terms of this Settlement Agreement.

p.      "Liquidated Damages" shall mean the portion of any settlement payment to a Plaintiff that is designated in this Settlement Agreement as representing liquidated damages under the FLSA and is calculated in accordance with the terms of this Settlement Agreement.

q.      "Prejudgment Interest" shall mean the portion of any settlement payment to a Plaintiff that is designated in this Settlement Agreement as representing prejudgment interest under applicable state or federal law and is calculated in accordance with the terms of this Settlement Agreement.

r.      "Settlement Check" shall mean payment from Oracle as consideration for releasing a Claim, calculated in accordance with the terms of this Settlement Agreement.

s.      "Opt In" shall mean a Plaintiff's exercise of his or her right under Section 16 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §216(b), to file an FLSA overtime claim in the Court Action and to settle such claim pursuant to this Settlement by endorsing and depositing a Settlement Check that includes a payment for FLSA Liquidated Damages.

t.      "Final Order" shall mean entry of final judgment substantially in the form attached hereto as Exhibit D.

u.      "Settlement Effective Date" shall mean the first day following the last of the following occurrences:

i.      The date of final Court approval and entry of the Final Order if no objections have been filed with the Court;

ii.     The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of a Final Order approving the

Settlement has expired with no appeal or other judicial review having been taken or sought; or

iii.      If an appeal or other judicial review has been taken or sought, the date the Final Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom, or the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review therefrom.

## SETTLEMENT CLASSES

2.      State Settlement Classes.  For settlement purposes only, the Parties shall stipulate to, and will seek the Court's provisional and permanent certification of, the following two state law classes:

a.      All current or former employees who work or worked for Oracle Direct (formerly Internet Sales Division) in a Covered Job Code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 1999 and  before July 1, 2004 in California ("California Class");

b.      All current or former employees who work or worked for Oracle Direct (formerly Internet Sales Division) in a Covered Job Code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 2001 and before July 1, 2004 in Massachusetts ("Massachusetts Class").

3.      FLSA Collective Action.  For settlement purposes only, the Parties further stipulate to, and will seek the Court's provisional and permanent certification of, this Court Action as an FLSA Collective Action on behalf of all current or former employees

-9-

who work or worked for Oracle Direct (formerly Internet Sales Division) in a Covered Job Code within Oracle Direct, providing in-house sales and customer pre-sales service to existing or potential Oracle customers at any time on or after June 19, 2000 and before July 1, 2004 at any Oracle Direct work location in California, Massachusetts, Virginia, or Florida.

## **PRELIMINARY SETTLEMENT APPROVAL**

4.      Preliminary Settlement Approval.  Plaintiffs' Counsel and counsel for Oracle shall jointly apply to the Court, on or before May 20, 2005, for an Order Preliminarily Approving Settlement, in substantially in the form attached hereto as Exhibit D, which:

a.      Preliminarily approves the Settlement as embodied in this Settlement Agreement;

b.      Provisionally certifies the California Class and Massachusetts Class, and provisionally certifies the Court Action as an FLSA Collective Action;

c.      Approves the Notices required for the proposed Settlement as attached hereto as Exhibit C (E-Mailed Notice) and Exhibit B (Mailed Notice, including templates for disclosure of individualized settlement amount and Claim Form);

d.      Sets forth the procedures and schedules for any Plaintiff to object to the proposed Settlement and for any California Plaintiff or Massachusetts Plaintiff to opt out of the proposed Settlement of the California Class claims or Massachusetts Class claims, respectively;

e.      Sets September 20, 2005 as the deadline for any objections and opt outs to be filed in accordance with the terms of this Settlement;

f.      Sets forth all other reasonable and necessary procedures and schedules for the implementation of the terms and conditions of the proposed Settlement, including the submission of Claims, the mailing of Settlement Checks, the accounting of payments and Claims, and the release of Claims; and

g.      Schedules a Fairness Hearing for September 30, 2005 to allow the Court to receive evidence and to consider objections and arguments concerning whether to approve the settlement of Claims as reflected in this Settlement.

5.      <u>Negotiate in Good Faith</u>.  The Parties shall negotiate in good faith to agree on the terms and provisions of all Court submissions and other documents required by this Settlement.  Should the Parties disagree after such good-faith negotiations, the Parties shall submit their dispute for resolution by the Court.

6.      <u>Best Efforts</u>.  The parties shall devote their best efforts to obtain Court approval of this Settlement.  Through written notice Oracle shall encourage each eligible Plaintiff fully to participate in the Settlement, including by not opting out and by filing a timely Claim pursuant to the Settlement, and Oracle shall not encourage any Plaintiff to "opt out" of the proceedings or not to submit a Claim.  None of the parties or their counsel shall encourage, either directly or indirectly, any individual or entity to object to the fairness or reasonableness of this Settlement, or to delay in any manner the Court's approval of this Settlement Agreement and the Settlement it reflects.  Prior to Oracle's distribution of any written information pertaining to this Settlement to Plaintiffs or to its managers or employees for distribution or dissemination to Plaintiffs, Oracle shall provide such information to Plaintiffs' Counsel.

## <u>NOTICE</u>

7.      <u>E-Mailed Notice</u>.  On or before June 17, 2005 Oracle shall e-mail to each Plaintiff who is a then-current employee a copy of the E-Mailed Notice (Exhibit C).  The

E-Mailed Notice shall include:  a summary of the principal Settlement terms; a description of the procedures and deadlines for opting out, objecting, and filing a Claim; an explanation of the procedures and the effect of the Settlement with respect to a Plaintiff's release of claims against Oracle under applicable law; a statement of the basis upon which Plaintiffs' Counsel will seek Court approval of their application for attorneys' fees; and an explanation of how each Plaintiff can obtain a Claim form and more detailed information concerning the Settlement without expense by contacting Plaintiffs' Counsel directly or visiting the www.oracleovertime.com website, or by contacting separate private counsel at the Plaintiff's own expense.

8.    Mailed Notice.  On or before June 17, 2005 Oracle shall separately mail an individualized Mailed Notice (Exhibit B) by Registered Mail – Return Receipt Requested to the last-known address of each Plaintiff.  Each individualized Mailed Notice shall include all information set forth in the summary E-Mailed Notice, and in addition shall provide an individualized accounting that informs each individual Plaintiff to whom it is mailed how such Plaintiff's Settlement Check will be calculated and what amount will be paid for Back Wages, Liquidated Damages, if any, and Prejudgment Interest (through September 30, 2005) if that Plaintiff files a timely Claim, to enable each Plaintiff meaningfully to decide whether to participate in the settlement, to dispute any data that is subject to dispute under ¶14, or to opt out or to object.  Each individualized Mailed Notice shall also include a pre-printed Claim form, substantially similar to the form set forth in Exhibit B attached hereto, which shall include the address to which the Claim must be sent and the deadline by which the Claim must be postmarked to be valid and effective.

9.    Costs of Notice.  All costs relating to the printing, distribution and administration of E-Mailed, Mailed, and Reminder Notices (*see* ¶10, *infra*) shall be paid by Oracle.  Plaintiffs' Counsel may at their own expense also post information concerning the Settlement on www.oracleovertime.com or on such other website as Plaintiffs' Counsel may create.  Such websites created by or at the direction of Plaintiffs' Counsel

shall be shut down and the content removed no later than seventy-five calendar (75) days after the Settlement Effective Date.

10. <u>Follow-Up Regarding Returned or Otherwise Undelivered Notices</u>.  If any Mailed Notice is returned as undeliverable, or if any Plaintiff does not sign a registered mail receipt to acknowledge receipt of the Mailed Notice, Oracle shall, within one week if reasonably practicable but no later than the second Friday following Oracle's receipt of that information, inform Plaintiffs' Counsel of such individual Plaintiff's name, dates and location of employment, job classification, social security number, and last-known contact information (including last-known e-mail address(es)).  For each such Plaintiff who is a then-current employee of Oracle, Oracle shall also send a copy of the Plaintiff's Mailed Notice to that Plaintiff through Oracle's internal e-mail delivery system.  Plaintiffs' Counsel may, at their own expense, conduct reasonable "skip-tracing" to locate the current address of any Plaintiff who did not receive his or her Mailed Notice or did not sign a registered mail receipt to acknowledge receipt of the Mailed Notice.  Oracle shall promptly re-send the individualized Mailed Notice to each Plaintiff whose current address is located by Plaintiffs' Counsel through such skip-tracing.

11. <u>Notice Satisfies Due Process</u>.  Counsel for the Parties agree that the Notices attached hereto as Exhibits B and C (including the template for disclosure of individualized settlement amount in Exhibit B) and the procedures set forth herein for distributing such Notices are consistent with due process requirements, constitute the best practical form of notice, and provide reasonable certainty of informing all eligible participants about the Settlement.

## **AGGREGATE TOTALS AND INDIVIDUAL CLAIMS**

12. <u>Settlement Tables</u>.  Attached hereto as Exhibits E-J are revised tables setting forth the amounts that Oracle has calculated would be due and owing under this settlement

to California Plaintiffs (Exhibit E), Massachusetts Plaintiffs (Exhibits F and G combined), and Virginia/Florida Plaintiffs (Exhibits H, I and J combined), if each eligible Plaintiff files a timely Claim, which tables are subject to Plaintiffs' Counsels' verification pursuant to ¶14.  Each table attached as Exhibits F-J separately sets forth the total amount of Back Wages, Prejudgment Interest (through September 30, 2005 only), and Liquidated Damages, if any, collectively attributable to Plaintiffs who worked in each Job Category. Each table separately sets forth within each of the three Job Category bands the amounts collectively attributable to:  a) those Plaintiffs who signed a Termination Release; and b) all other Plaintiffs who did not sign a Termination Release.  Payment of settlement amounts to Plaintiffs shall be on a claims-made basis.  Therefore, notwithstanding the amounts set forth in Exhibits F-J, Oracle shall only be obligated to pay pursuant to this Settlement the amounts respectively set forth in the attached Exhibits to those individual Plaintiffs who file timely and valid Claims, plus the agreed-upon amounts required by this Settlement for reasonable attorneys' fees, expert fees and costs (¶21), and the enhancement for each of the Representative Plaintiffs (¶20).

13.    <u>Payment Upon Claims Being Made</u>.  All Plaintiffs, except California Plaintiffs and Massachusetts Plaintiffs who timely opt out of this Settlement pursuant to ¶33 herein, may submit a Claim pursuant to this Settlement.  To submit a Claim, a Plaintiff must send a completed Claim form, in substantially the form set forth in Exhibit B, to the following address, postmarked no later than seventy-five calendar (75) days after the Settlement Effective Date:

> Oracle Overtime Settlement/Paul, Hastings, Janofsky & Walker LLP
> P.O. Box 71704
> Los Angeles, CA  90071

Claims may be submitted prior to the Fairness Hearing, and may not be invalidated on the ground that they were submitted before this Settlement was finally approved by the Court. Oracle shall not be required to pay any settlement amounts pursuant to this Settlement to

-14-

any Plaintiff who submits a Claim postmarked more than seventy-five (75) days after the Settlement Effective Date, although Oracle in its discretion may pay any late-submitted Claim for good cause shown.  If any Plaintiff submits a Claim that is timely but not valid, either because it is not signed or because it is not substantially in the form set forth in Exhibit B, Oracle shall send the Plaintiff, with a copy to Plaintiffs' Counsel, a copy of his or her Individualized Notice with a letter explaining the reason why the Claim is not valid, and shall provide the Plaintiff an additional twenty-one (21) calendar days or until the Settlement Effective Date, whichever is later, in which to submit a valid Claim.

## SETTLEMENT DATA REVIEW AND VERIFICATION

14.     <u>Data Review and Verification</u>.  Oracle represents that it will make available to Plaintiffs' Counsel on or before May 24, 2005 all data upon which Exhibits E-J are based and all data used to create each of the charts that Oracle previously generated and produced to Plaintiffs' Counsel during settlement negotiations.  Plaintiffs' Counsel shall be entitled to review and verify that data and the underlying methodologies used to calculated Exhibits F-J, and the individual settlement amounts for each Plaintiff, with the assistance of experts or consultants of Plaintiffs' Counsels' choosing whose fees to perform the services set forth in this paragraph will be paid by Plaintiffs' Counsel.  All such data is further subject to Plaintiffs' Counsels' reasonable in-person questioning of knowledgeable individuals designated by Oracle about the source and accuracy of the data and the methodology used to create such tables and charts.  Plaintiffs' Counsel shall inform Oracle in advance of the subject areas about which counsel intend to ask questions. After the completion of Plaintiffs' Counsels' questioning of such knowledgeable individuals, Oracle shall, upon reasonable request of Plaintiffs' Counsel, submit a sworn written statement setting forth the applicable methodology and addressing the information covered with Plaintiffs' Counsel and related remaining questions.  If the sworn written statement and reasonable attempts to clarify it do not provide sufficient information to

establish the source and accuracy of the data and the methodology used to create the

tables and charts, Plaintiffs' Counsel may take a deposition of the knowledgeable

individuals to obtain answers under oath to questions concerning Oracle's data and

methodologies.  Nothing in this Settlement Agreement shall constitute a waiver of the

work product privilege that attaches to the work product of any consultant used by Oracle

in this or any other matter, including but not limited to Ellen Liebman, nor permit

questioning or other inquiry regarding any analysis that is not listed in this Settlement

Agreement.

15.     <u>Correction of Certain Data</u>.  Any Plaintiff who can demonstrate through

documentary evidence (such as check stubs, extended-day work schedules, work e-mails,

log books, etc.) that he or she worked in a different Job Category, worked in a different

State, did not sign a Termination Release, worked more Work Weeks or Full Weeks, or

had a higher Regular Hourly Rate in any Work Week or Full Week, than is reflected in his

or her individualized Claim calculation, may submit the documentary evidence to Oracle

with a copy to Plaintiffs' Counsel and request a re-calculation of his or her settlement

amount based on such different data.  Oracle shall review such submissions in good faith,

and shall adjust the amount of any Settlement Check so challenged no later than

September 16, 2005, if the challenge is supported by documentary evidence.  If Oracle

does not agree to accept the information provided by a Plaintiff and re-calculate the

settlement amount, Plaintiff and Oracle shall attempt to resolve their differences

informally.  In the absence of agreement, the Plaintiff may submit the matter to a Special

Master to be mutually selected by Oracle and Plaintiffs' Counsel, with the costs of such

Special Master shared equally between Oracle and the Plaintiff disputing Oracle's

determination unless the Special Master otherwise orders.

16.     <u>Withdrawal From Settlement Agreement</u>.  Plaintiffs may withdraw from this

Settlement and render it null, void, and of no effect if Plaintiffs' Counsel concludes after

reviewing the data and methodology used to create Exhibits E-J but no later than June 10,

2005, that the facts are materially different than Oracle represented them to be at the time Plaintiffs entered into a Settlement in principle on April 1, 2005.  Oracle may withdraw from this Settlement and render it null, void, and of no effect if Oracle concludes after its review of any revision to Exhibits F-J occasioned by Plaintiffs' Counsels' inquiry (pursuant to ¶14), but no later than June 17, 2005, that the total cost of this Settlement (including accrued prejudgment interest) will be more than three percent (3%) higher than Oracle had projected based on the tables attached hereto as Exhibits F-J.  Oracle may also withdraw from this Settlement and render it null, void, and of no effect if the settlement amounts (for Back Wages, Liquidated Damages, Massachusetts penalty, and Prejudgment Interest combined) that would have been payable to Plaintiffs who timely opt out pursuant to ¶33 comprise 10% or more of the total Settlement amounts (for Back Wages, Liquidated Damages, Massachusetts penalty, and Prejudgment Interest combined) that would have been payable if all Plaintiffs had filed a timely Claim.  Oracle may not withdraw from this Settlement pursuant to this 10% opt-out provision, however, unless it provides notice in writing to Plaintiffs' Counsel and the Court of its decision to withdraw, postmarked on or before September 26, 2005.

## SETTLEMENT CALCULATIONS

17.     _Determination of Average Weekly Overtime Hours_.  Each Plaintiff's individual settlement amount shall be based upon that Plaintiff's actual Regular Hourly Wage and actual number of Work Weeks, and the Average Weekly Overtime Hours for all Plaintiffs employed in the Covered Period in that Plaintiffs' Job Category, as further defined and explained below.

a.     _General Methodology_.  For purposes of this Settlement only, the Parties have agreed upon the following methodology for calculating and reaching a compromise Settlement Agreement on the Average Weekly Overtime Hours worked during the Covered Period for Plaintiffs in each of the three covered Job Categories

-17-

(Internet Sales Representative, Internet Response Representative, and All Others), using the most accurate existing telephone sign-in/sign-off data available to Oracle.  Oracle represents that it did not maintain, and does not possess, complete and accurate time records for any Plaintiff during the Covered Period, showing the actual number of hours worked per day, per week, or per pay period.

   b.   <u>Calculating the Adjusted Daily Hours Worked</u>.  Oracle shall select all person weeks  during the Covered Period for which it has Reliable Full Week Data available.  For each day in each  person-week, Oracle shall determine the  the Daily Hours Worked by calculating the difference between each recorded employee's daily sign-in and sign-out time data for that  day. .  For every day in which the resulting calculation shows five (5.0) or more Daily Hours Worked, Oracle shall reduce that day's hours worked by one (1.0) hour to account for a lunch break  Oracle shall then add to the Daily Hours Worked on each week day the negotiated amount of 24 minutes per day (2.0 hours per week) for Internet Sales Representatives and 18 minutes per day (1.5 hours per week) for Internet Response Representatives and All Others.  The resulting calculation constitutes the Adjusted Daily Hours Worked for that day.

      i.   <u>Weekly Overtime Hours</u>.  If for any such Full Week in which Oracle has Reliable Full Week Data the resulting total number of Adjusted Daily Hours Worked is greater than 40 (*i.e.*, if the Reliable Full Week Data hours for that person-week, plus the negotiated 2.0 or 1.5 hours, minus a one-hour lunch break reduction for days with five or more hours worked without the negotiated additur, exceeded 40), the difference between those hours and 40 hours shall constitute the Weekly Overtime Hours for that person-week.  The Weekly Overtime Hours shall be deemed to be zero for any person-week in which the total adjusted hours are 40 or fewer (*i.e.*, if the number of Adjusted Daily Hours Worked for all days in a Full Week in which Oracle has Reliable Full Week Data is 40 or fewer).

ii.      Daily Overtime Hours.  To determine the Daily

Overtime Hours for California Plaintiffs during the California Class Period

(except the period June 19, 1999 through December 31, 1999, during which

California did not require daily overtime for more than eight hours in a work

day), Oracle shall apply the calculations set forth in this ¶17.b, but subtract eight

(8.0) hours from each day in which the Adjusted Daily Hours Worked exceeds

eight (8.0) hours, instead of subtracting 40 hours from the total number of

Adjusted Daily Hours Worked in the entire person-week.  The Weekly Overtime

based on Daily Overtime Hours is the sum of the Daily Overtime Hours worked

in the week.  If the Daily Overtime Hours for any week are less than the Weekly

Overtime Hours for that week, the Weekly Overtime Hours are assigned to that

week instead of the Daily Overtime Hours.

c.      The Average Weekly Overtime Hours Calculations.     Each

Plaintiff's individual settlement amount shall be calculated using that Plaintiff's actual

Regular Hourly Wage and actual number of Work Weeks but also using a negotiated

*average* number of weekly overtime hours worked by *all Plaintiffs* in that Plaintiff's Job

Category.  To determine the average amounts of weekly overtime worked by Plaintiffs in

each of the three Job Categories (Internet Sales Representatives, Internet Response

Representatives, and "Others"), Oracle shall perform the following calculations:

i.      Job Category Averages.  To calculate the Average

Weekly Overtime Hours, Oracle shall first determine which Plaintiffs had at

least one full week of Reliable Full Week Data.  For each Plaintiff who had at

least one week of Reliable Full Week Data in a Job Category, Oracle shall sum

that Plaintiff's Weekly Overtime Hours, computed by the Weekly Overtime or

Daily Overtime method described in 17.b.i and 17.b.ii, in all of that Plaintiff's

Full Weeks with Reliable Full Week Data for that Job Category and divide that

sum by the total number of Full Weeks for which that Plaintiff had Reliable Full

Week Data for that Job Category.  Oracle shall then calculate, within each separate Job Category, the average of all of the resulting individual Average Weekly Overtime Hours by summing all of the individual Average Weekly Overtime Hours in each of the Job Categories and then dividing this sum by the total number   of employees with individual Average Weekly Overtime Hours in each of the Job Categories.  Oracle calculated the Average Weekly Hours worked in each of the Job Categories by adding 40 hours to the Average Weekly Overtime for the Job Category.

   ii.  Calculations for California Plaintiffs.  To calculate Average Weekly Overtime Hours for California Plaintiffs, Oracle shall use the Daily Overtime Hours calculated pursuant to ¶17.b.ii for California employees and the Weekly Overtime Hours calculated pursuant to 17.b.i for Massachusetts and Virginia/Florida employees and calculate the job category averages pursuant to 17.c..  The Average Weekly Overtime Hours are:

| | |
|---|---|
| Internet Sales Representatives: | 4.79 |
| Internet Response Representatives: | 3.48 |
| Others: | 3.05 |

   iii.  Calculations for Massachusetts and Virginia/Florida Plaintiffs.  To calculate the Average Weekly Overtime Hours for Massachusetts and Virginia/Florida Plaintiffs, Oracle shall use the Daily Overtime Hours for California employees for the period from June 19, 1999 through June 18, 2001, calculated pursuant to 17.b.ii, the Weekly Overtime Hours for California employees for the period June 19, 2001 through June 30, 2004, calculated pursuant to 17.b.i and the Weekly Overtime Hours for Massachusetts and Virginia/Florida employees calculated pursuant to 17.b.i and calculate the job category Averages pursuant to 17.c.  by summing the total hours worked in the week and subtracting 40 hours.  The Average Weekly Overtime Hours are:

Internet Sales Representatives:        4.65
Internet Response Representatives:     3.31
Others:                                2.74

18.      Calculation of Back Wages Portion of Settlement.  Subject to the further adjustments described below in ¶19 (*e.g.*, for high commission income months for non-California Plaintiffs), the Back Wages portion of each Plaintiff's Settlement Check shall be calculated by multiplying:

(a) the Average Weekly Overtime Hours attributable to all Plaintiffs in that Plaintiff's Job Category during the Covered Period (using either the California or non-California average, depending upon whether the Plaintiff was employed in California during each covered week);

by

(b) that Plaintiff's Regular Hourly Rate during each Full Week worked during the Covered Period, based upon Oracle's actual payroll records

by

(c) the legally-required overtime premium multiplier

by

(d) the actual number of Full Weeks worked by that Plaintiff during the Covered Period, based upon Oracle's actual payroll records after adjusting the number of Full Weeks worked to take into consideration vacations, holidays, leaves, and weeks in which a Plaintiff did not work the entire week in a class job.  Oracle made these adjustments by (i) prorating the amount of Average Weekly Overtime Hours in weeks in which Oracle's payroll records demonstrate a Plaintiff did not spend the entire week working in a class job; and (ii) excluding weeks in which Oracle's

-21-

payroll records demonstrate that a non-California Plaintiff actually took one or more holiday or vacation days off or was on leave and, therefore, did not work more than forty (40) weekly hours in a class job; and (iii) prorating the amount of Average Weekly Overtime Hours in weeks in which Oracle's payroll records demonstrate a California Plaintiff actually was on leave or vacation or had a holiday.

      a.     Calculation of each individual Plaintiff's Regular Hourly Rate shall be performed in accordance with the requirements of applicable state and federal law, taking into account salary, bonuses, commissions, and such other amounts as are required to be included in an employee's Regular Hourly Rate.  The determination of when each individual Plaintiff's bonuses, commissions, and other amounts required to be included are deemed to have been earned and received shall be based upon Oracle's actual payroll data and its usual and customary business practices of:

      i.     Paying commissions at the end of the month following the month in which the sale is made;

      ii.     Paying bonuses forty-five (45) days after the close of the fiscal quarter to which the bonus is attributed;

      iii.     Deeming commissions as earned over the three (3) months prior to the month in which they are paid;

      iv.     Deeming bonuses as earned over the entire quarter to which they are attributed; and

      v.     Deeming club fringe payments as earned over the entire prior fiscal year prior to the year of payment.

19.   <u>Calculation of Settlements: State-Specific</u>.  Subject to all of the terms and conditions of this Settlement Agreement, Oracle shall pay or cause to be paid the following amounts in full and final settlement of any and all timely and valid Claims submitted by Plaintiffs:

a.   <u>California Plaintiffs</u>:  The payment to each California Plaintiff who files a timely and valid Claim shall be further based on the following standards:

i.   California Plaintiffs shall be entitled to recover for weeks worked in California between June 19, 1999 and June 30, 2004.

ii.   All California Plaintiffs who file a timely and valid Claim shall be entitled to California Back Wages as calculated under applicable California law, using the Average Weekly California Overtime Hours set forth in ¶17.c.ii; except that notwithstanding the foregoing, no California Plaintiff shall be entitled to any California Back Wages attributable to any month of employment during the Covered Period as an Internet Sales Representative in which more than 50% of that Plaintiff's monthly employment income from Oracle was based on commission sales.  This exclusion of certain high-commission months from compensable Back Wages shall not apply to any California Plaintiffs for work performed while employed as an Internet Response Representative or as an All Other.

iii.   All California Plaintiffs who file a timely and valid Claim and did not execute a Termination Release shall in addition to California Back Wages receive as FLSA Liquidated Damages an amount equivalent to forty percent (40%) of the Non-California Back Wages that would have been attributable to that Plaintiff's weeks worked during the Covered Period on or after June 19, 2001 and calculated under federal law using Average Non-California Overtime Hours rather than Average California Overtime Hours.

-23-

iv.       All California Plaintiffs who file a timely and valid Claim shall receive prejudgment interest at 8%, compounded annually, on the California Back Wages' portion of their settlements, calculated separately for each week during the Covered Period for which settlement monies are due, with such interest continuing to accrue at 8% compounded annually until the date of Preliminary Settlement Approval.  After Preliminary Settlement Approval, prejudgment interest shall accrue on the resulting amount, at the revised annual compounded rate of 3%, such interest to continue accruing from the date of Preliminary Settlement Approval until the Plaintiff's Claim is fully paid by Oracle after the Settlement Effective Date.

b.       Massachusetts Plaintiffs:  The payments to each Massachusetts Plaintiff who files a timely and valid Claim shall be further based on the following standards:

i.       Massachusetts Plaintiffs shall be entitled to recover for weeks worked in Massachusetts between June 19, 2000 and June 30, 2004.

ii.       All Massachusetts Plaintiffs who file a timely and valid Claim shall be entitled to Back Wages, calculated under applicable federal law between June 19, 2000 and June 18, 2001 and under applicable Massachusetts law between June 19, 2001 and June 30, 2004.  The methodology for calculating Non-California Back Wages set forth in ¶17 above shall apply to the calculation of Massachusetts Plaintiffs' Back Wages, except that with respect to weeks worked between June 19, 2000 and June 19, 2001, the Massachusetts' Plaintiffs' Back Wages shall be calculated without the additional 2.0 hours per week/24 minutes per day additur for Internet Sales Representatives and without the  additional 1.5 hours per week/18 minutes hours per day additur for Internet Response Representatives and All Others, and no Massachusetts Plaintiff shall

-24-

be entitled to any Back Wages attributable to any month of employment prior to June 2001 in which more than 50% of that Plaintiff's monthly employment income from Oracle was based on commission sales.

iii.      There shall be no reduction for any Massachusetts Plaintiff for any month between June 2001 and July 2004, in which such Massachusetts Plaintiff earned sales commissions, regardless of the amount of such sales commissions.

iv.      All Massachusetts Plaintiffs who file a timely and valid Claim and did not execute a Termination Release shall in addition to Back Wages receive as a Massachusetts penalty an amount equivalent to fifty percent (50%) of the back salary only (not Back Wages) attributable to weeks worked in Massachusetts during the Covered Period on or after June 19, 2001 and before June 30, 2004.

v.      All Massachusetts Plaintiffs shall receive prejudgment interest at the rate of 3%, compounded annually, calculated separately on the Back Wages portion of their settlements for each week on or after June 19, 2000 and until June 18, 2001 for which settlement monies are due, and shall in addition receive simple prejudgment interest at 12% accruing from June 19, 2003 on the Back Wages portion of their settlements, calculated separately on the Back Wages portion of their settlements for each week on or after June 19, 2001 for which settlement monies are due, such interest to continue accruing at those rates until the date of Preliminary Settlement Approval.  After Preliminary Settlement Approval, prejudgment interest shall accrue on the resulting combined amounts, at the annual compounded rate of 3%, such interest to continue accruing from the date of the Preliminary

1   Settlement Approval until the Plaintiff's Claim is fully paid by Oracle after the

2   Settlement Effective Date.

3
        c.      Virginia/Florida Plaintiffs:  The payments to each Plaintiff employed
4
    by Oracle in Virginia or Florida during the Covered Period ("Virginia/Florida Plaintiff")
5
    who files a timely and valid Claim shall be further based on the following standards:
6

7               i.      Virginia/Florida Plaintiffs shall be entitled to recover

8   for weeks worked in Virginia or Florida between June 19, 2000 and June 30,

9   2004.

10
                ii.     All Virginia/Florida Plaintiffs who file a timely and
11
    valid Claim shall be entitled to Back Wages, calculated under applicable federal
12
    law.  The methodology for calculating Non-California Back Wages set forth in
13
    ¶17 shall apply to the calculation of Virginia/Florida Plaintiffs' Back Wages,
14
    except that with respect to weeks worked between June 19, 2000 and June 18,
15
    2001, the Virginia/Florida Plaintiffs' Back Wages shall be calculated without the
16
    additional 2.0 hours per week/24 minutes per day additur for Internet Sales
17
    Representatives and without the additional 1.5 hours per week/18 minutes hours
18
    per day additur for Internet Response Representatives and All Others.
19
    Notwithstanding the foregoing, no Virginia/Florida Plaintiff shall be entitled to
20
    any Back Wages attributable to any month of employment during the Covered
21
    Period as an Internet Sales Representative in which more than 50% of that
22
    Plaintiff's monthly employment income from Oracle was based on commission
23
    sales.  This exclusion of certain high-commission months from compensable
24
    Back Wages shall not apply to any Virginia/Florida Plaintiffs for work
25
    performed while employed as an Internet Response Representative or as an All
26
    Other.
27

28

-26-

iii.     All Virginia/Florida Plaintiffs who file a timely and valid Claim and did not execute a Termination Release shall in addition to Back Wages receive as FLSA Liquidated Damages an amount equivalent to fifty percent (50%) of the Back Wages attributable to weeks worked in Virginia or Florida during the Covered Period between June 19, 2001 and June 30, 2004.

iv.     All Virginia/Florida Plaintiffs shall receive prejudgment interest at the rate of 3%, compounded annually, calculated separately on the Back Wages portion of their settlements for each week between June 19, 2000 and the Preliminary Settlement Approval date for which settlement monies are due, such interest to continue accruing at that rate until the date of the Preliminary Settlement Approval.  After Preliminary Settlement Approval, prejudgment interest shall accrue on the resulting amount at the annual compounded rate of 3% until the Plaintiff's Claim is fully paid by Oracle after the Settlement Effective Date.

20.    <u>Enhancements to Representative Plaintiffs</u>.  Subject to Court approval, Oracle shall separately pay an enhancement in the sum of twelve thousand five hundred dollars ($12,500) to each of the two Representative Plaintiffs, Michel Driscoll and Brian Connelly, and shall pay California Plaintiff Michel Driscoll Liquidated Damages pursuant to ¶19 herein notwithstanding Oracle's contention that Plaintiff Driscoll executed a Termination Release, which sums shall be in addition to the amounts the Representative Plaintiffs are otherwise entitled to under this Settlement, as compensation for their efforts in obtaining and providing information and facilitating the settlement of this action.  Such enhancements shall be made to the Representative Plaintiffs by Oracle, minus legally-required deductions, no later than fifteen (15) calendar days after the Settlement Effective Date.

**ATTORNEYS' FEES AND COSTS**

21.     Attorneys' Fees and Costs.  Separate and apart from the payments to Plaintiffs, Oracle shall pay an additional sum to Plaintiffs' Counsel as a reasonable hybrid statutory and common fund attorneys' fee and for all costs, subject to Court approval, in the amount of two million two hundred thirty-nine thousand one hundred ninety-five dollars and 95 cents ($2,239,195.95).  Plaintiffs' Counsel shall file a Motion for Approval of Attorneys' Fees and Costs no later than thirty-five (35) days before the Fairness Hearing Date of September 30, 2005.  At the Fairness Hearing, the Court shall have the power to reallocate the fee portion of the proposed settlement as between Plaintiffs and Plaintiffs' Counsel in a manner that gives to Plaintiffs, rather than Plaintiffs' Counsel, some of the amount designated herein as fees, so long as the total amount to be paid by Oracle is not increased from the amount provided in this Settlement Agreement.  If the Court reallocates some portion of the attorneys' fees, counsel for the parties will meet and confer and will subsequently present the Court with an allocation plan for those funds. Such payment for Attorneys' Fees and Costs by Oracle, if approved by the Court, shall constitute the total amount of Attorneys' Fees and Costs to which Plaintiffs' Counsel are entitled from Oracle in connection with this Court Action and this Settlement.  Oracle shall not be liable for any additional amount relating to Plaintiffs' Counsels' out-of-pocket expenses, past or present, including expert and consultant fees.  The court-approved Attorneys' Fees and Costs shall accrue interest, from the date the original Settlement Agreement was executed (May 21, 2005), at an annual compounded interest rate of 3% until such Attorneys' Fees and Costs and accrued interest are paid by Oracle after the Settlement Effective Date.  Oracle shall pay all Attorneys' Fees and Costs required by this paragraph and approved by the Court to the Altshuler, Berzon, Nussbaum, Rubin & Demain Trust Fund no later than fifteen (15) calendar days after the Settlement Effective Date.

**RELEASES**

22.   <u>Release of Oracle</u>.  By means of the Final Order, on the Settlement Effective Date (or for FLSA Plaintiffs who Opt In, on the date on which they Opt In, if later than the Settlement Effective Date), all claims, demands, rights, liabilities, and causes of action for each FLSA Plaintiff who timely Opts In and for each California Plaintiff and Massachusetts Plaintiff who does not timely opt out, whether known or unknown, suspected or unsuspected, which now exist in favor of or which were or are asserted by or in favor of any such Plaintiff, or any of their present or former successors and assigns, against Oracle, its parents, subsidiaries and affiliated entities, the predecessors and successors of all such entities, and the past and present officers, directors, trustees, partners, employees, agents, attorneys, accountants, heirs, representatives, and assigns of all such entities, in connection with or that existed during the Covered Period and that arise out of the subject of the Court Action, the Settlement, or any matters, transactions, acts, or omissions asserted or referred to in the Court Action, shall be compromised, settled, released and dismissed with prejudice; *provided*, *however*, that this release shall only apply to:

a.   Claims relating to alleged unpaid overtime compensation and related liquidated damages, penalties and interest, arising during the Covered Period that have been or could be asserted under the overtime provisions of the Fair Labor Standard Act, 29 U.S.C. § 207, by any FLSA Plaintiff who Opts In;

b.   Claims related to alleged damages and restitution for unpaid overtime compensation, and related penalties or interest, meal and rest periods, and alleged failure to maintain and post required records, arising during the Covered Period that have been or could be asserted under the provisions of California Labor Code, including but not limited to §§201-204, 226.7, 510, 558, 1174(d), 1194-98, 2698-2699, Wage Order No. 4, and

California Business and Professions Code §17200 *et seq.*, by any California Plaintiff who does not timely opt out;

c. Claims related to unpaid overtime compensation, and related penalties and interest arising during the Covered Period that have been or could be asserted under the provisions of Massachusetts General Laws, including but not limited to Chap. 151 §§1A, 1B, 15, 19, 20, 27C, by any Massachusetts Plaintiff who does not timely opt out;

d. Claims for attorneys' fees and costs related to the Court Action or any Claim released by this Settlement Agreement; and

e. Claims for injunctive and declaratory relief based on allegations that Oracle during the Covered Period failed to pay required unpaid overtime compensation, and related liquidated damages, penalties or interest, meal and rest periods, and failed to maintain and post required records pertaining to compensation and hours during the Covered Period.

This release does not apply to any claims of any Plaintiff that do not relate to Oracle's alleged mis-classification of Plaintiffs as exempt, failure to pay overtime wages and related liquidated damages, interest, and/or penalties, including penalties, if any, for missed meal and/or rest periods, or for failure to maintain or post records. Oracle shall be entitled to include release language on the back of each settlement check.

23. <u>Set-Off of Settlement Amounts</u>. Upon Oracle's presentation to Plaintiffs' Counsel of legal authority deemed satisfactory to Plaintiffs' Counsel, the Parties shall prepare and submit to the Court a written stipulation providing that any Back Wages payments made pursuant to this Settlement to any Plaintiff who does not release any FLSA claims that such Plaintiff may have against Oracle for work performed during the

Covered Period shall be deemed an offset to any future FLSA recovery that may be available for such Plaintiff for any Covered Period compensated through this Settlement.

## **CLAIMS PROCESS**

24.   Claims Payments.  Oracle shall mail an individualized Settlement Check, to each Plaintiff who submits a timely Claim, within fifteen (15) calendar days after the Settlement Effective Date or fifteen (15) calendar days after the Plaintiff submits a timely Claim, whichever occurs later.

25.   FLSA Consents to Sue.  Any Plaintiff who endorses and submits for payment a Settlement Check that includes an amount designated for Liquidated Damages shall be deemed thereby to have filed a Consent to Sue and to have Opted In to the Court Action as an FLSA Plaintiff pursuant to 29 U.S.C. §216(b), and shall be covered by this Settlement and its release of Claims.

26.   Claims Payment Verification.  Oracle shall provide reasonable accountings and permit Plaintiffs' Counsel and the Court to conduct reasonable reviews of all settlement claims, payments, and disputes (if any) concerning implementation of the Settlement.

27.   Periodic Notification of Check Cashing.  Beginning as soon as reasonably practical but no later than the first Friday after fifteenth (15th) day following the date Oracle first begins mailing Settlement Checks, and every Friday thereafter (excluding federal holidays) until and including the ninety-ninth (99th) day after the Settlement Effective Date, Oracle shall provide Plaintiffs' Counsel with an accounting of all Settlement Checks that have been mailed and submitted for payment.  Once each month Oracle shall confirm that information in a sworn accounting.

28.   <u>Follow-Up Regarding Plaintiffs Who Have Not Filed Claims</u>.  Oracle shall send by Registered Mail – Return Receipt Requested an individualized Reminder Notice, substantially in the form attached hereto as Exhibit K, to any Plaintiff who has not filed a Claim by thirty (30) calendar days after the Settlement Effective Date.  Such Reminder Notice shall include the information set forth in that Plaintiffs' individualized Mailed Notice, and shall further inform the Plaintiff of the final deadline for filing a Claim under this Settlement.  If any such Reminder Notice is returned as undeliverable, of if any Plaintiff does not sign a registered mail receipt to acknowledge receipt of such Reminder Notice, Oracle shall inform Plaintiffs' Counsel as soon as reasonably practicable but no later than the second Friday thereafter (excluding federal holidays) of such individual Plaintiff's name, dates and location of employment, job classification, social security number, and last-known contact information (including last-known e-mail address(es) if known by Oracle).  For each such Plaintiff who is a then-current employee of Oracle, Oracle shall also send a copy of the Plaintiff's Reminder Notice to that Plaintiff through Oracle's internal e-mail delivery system.  Plaintiffs' Counsel may, at their own expense, conduct reasonable "skip tracing" to locate the current address of any Plaintiff who did not receive his or her Reminder Notice or did not sign a registered mail receipt to acknowledge receipt of the Reminder Notice.  Oracle shall promptly re-send the Reminder Notice to each Plaintiff whose current address is located through such skip-tracing.

29.   <u>Uncashed Settlement Checks</u>.  If Oracle mails a Settlement Check to a Plaintiff who files a timely Claim, and that Plaintiff informs Oracle within sixty (60) of such mailing that he or she did not receive the Settlement Check, Oracle shall, after verifying that the original Settlement Check was not cashed by that Plaintiff, void the original Settlement Check and issue a second, and final, Settlement Check to such Plaintiff.

30.   <u>Costs of Settlement Administration</u>.  Oracle shall separately bear all costs for administering the Settlement Agreement (including the cost of any claims

1    administration, whether performed in-house or otherwise and the cost of providing notice
2    to Plaintiffs), but Plaintiffs' Counsel shall bear the cost of "skip tracing" to locate the
3    current addresses of Plaintiffs whose individualized Notices or Reminder Notices were
4    not received.  Except as otherwise specifically provided herein, Oracle shall not be
5    responsible for fees or costs accrued or incurred by Plaintiffs' Counsel in responding to
6    questions of Plaintiffs, maintaining a website pertaining to the Court Action, or taking any
7    other actions that they deem appropriate or necessary to conclude this Settlement.

8        31.    Tax Obligations.  Oracle shall be responsible for all tax withholding and for
9    paying all contributions an employer is required to pay by law on employee wages,
10   including but not limited to FICA and FUTA.  Such employer contributions shall be in
11   addition to any payments otherwise required by this Settlement.  If any amounts received
12   by a Plaintiff are construed to be income, it shall be that Plaintiff's sole responsibility to
13   pay taxes on the amount construed to be income.  Plaintiffs shall indemnify and hold
14   harmless Oracle and Plaintiffs' Counsel for any tax obligations or tax-related disputes
15   arising out of this settlement.  Oracle shall provide such W-2 forms, 1099 forms, and other
16   forms as required by law to each Plaintiff who files a Claim.

## OBJECTION AND OPT-OUT PROCEDURES

20        32.    Objection Procedure.  Any Plaintiff who wishes to file an objection to this
21   Settlement must submit such an objection in writing, to be received no later than
22   September 20, 2005 by Plaintiffs' Counsel, Oracle's Counsel, and the Court, at the
23   following addresses:

24           Law Offices of Christina Djernaes
             1215 De La Vina Street, Suite K
25           Santa Barbara, CA  93101

26           Nancy L. Abell
             Paul, Hastings, Janofsky & Walker, LLP
27           515 South Flower St., 25th Floor
             Los Angeles, CA 90071

28

-33-

1

2

3

*Driscoll v. Oracle*, No. 3-04-CV-02390 SI
United States District Court for the N. D. California
450 Golden Gate Avenue
San Francisco, CA  94102

4

5

6

7

No Plaintiff shall be permitted to assert an objection, or to have any objection considered at the Fairness Hearing, unless that Plaintiff has submitted a timely objection stating the reasons therefor.

8

9

10

11

12

13

14

15

16

17

    33.    Opt-Out Procedure.  Any California Plaintiff or Massachusetts Plaintiff who wishes to opt out of this Settlement must submit an opt-out notice, to be received no later than September 20, 2005 by Plaintiffs' Counsel, Oracle's Counsel, and the Court, at the addresses set forth in the preceding paragraph.  To be valid and effective, an opt-out notice must state the opting-out Plaintiff's name (and, where different, any other name(s) used during the Plaintiff's period of employment with Oracle), employee number or social security number, address and telephone number, must attach a copy of his or her individualized Mailed Notice, must be signed by the Plaintiff, must be timely received by Plaintiffs' Counsel, Oracle, and the Court, and must contain the following statement:

18

19

20

21

22

> I, [NAME] am a California Plaintiff or a Massachusetts Plaintiff who was or is employed by Oracle between [DATES of EMPLOYMENT] in [WORK LOCATION] in the capacity of a [JOB CATEGORY OR COVERED JOB CODE].  I hereby exercise my right to opt out of the Settlement, knowing that by doing so I waive any and all rights I may have to participate in that Settlement and to be paid any portion of the settlement proceeds that I would otherwise be eligible to receive under that Settlement.

23

## RECLASSIFICATION

24

25

26

27

28

    34.    Reclassification.  Oracle affirms that on or about July 1, 2004 it converted to non-exempt status all Plaintiffs who were then employed by Oracle Direct in Covered Job Codes.  Oracle represents that it has no present intention to re-classify as exempt any such Plaintiffs in any manner not permitted by applicable law.

-34-

1

**MISCELLANEOUS**

2

3      35.   Media Contacts.  The Parties and their counsel will not initiate any written

4  or oral communications with the news media relating to this Settlement Agreement, but

5  may respond to inquiries and will cooperate with each other in formulating any written

6  responses.  Such cooperation shall include the prior exchange of draft news releases and

7  other written materials that may be distributed to the news media that discuss this

8  Settlement Agreement or the parties' or their counsels' role in this litigation and

9  settlement.  Counsel for the Parties shall receive and in good faith consider each other's

10 views in determining the final content of any written response or submission to a media

11 inquiry.

12

13     36.   No Admissions.  Neither this Settlement Agreement nor the negotiations nor

14 proceedings leading up to this Settlement Agreement nor the receipt of any consideration

15 paid pursuant to this Settlement Agreement shall be taken to be an admission of

16 wrongdoing or liability to any person by Oracle or any other party.  None of the

17 provisions of the Settlement Agreement, nor evidence of any negotiations or proceedings

18 in pursuance of the compromise and settlement herein, shall be offered or received in

19 evidence in the Court Action or any other action or proceeding as an admission or

20 concession of liability or wrongdoing of any nature on the part of Oracle, except as

21 necessary to enforce the Settlement.

22     37.   Counterpart Execution.  This Settlement Agreement may be executed in one

23 or more counterparts, each of which shall be deemed to be an original but all of which

24 together shall constitute one and the same instrument.  Counsel for the Parties shall

25 exchange among themselves original signed counterparts, and a complete set of original

26 executed counterparts shall be filed with the Court.

27

28

REVISED STIPULATION AND SETTLEMENT
AGREEMENT
NO. 3-04-CV-02390 SI

38.     Entire Settlement Agreement.  This Settlement Agreement constitutes the entire Settlement Agreement among the Parties and may not be modified, amended or waived except in a writing duly executed by the Parties hereto, or by order of a court having jurisdiction.  The exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

39.     Binding Upon Successors.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

40.     Jointly Drafted.  This Settlement Agreement has been drafted jointly and is not to be construed against any party.

41.     Applicable Law.  The Settlement Agreement shall be governed by and construed in accordance with California law, except to the extent that federal law requires federal law to govern.

42.     Retention of Jurisdiction.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied herein.

43.     Invalid without Court Approval.  This Settlement Agreement is subject to approval by the Court.  In the event it is not approved, it shall be deemed null and void, of no force and effect, of no probative value, and the parties hereto represent, warrant, and covenant that it will not be used or referred to for any purpose whatsoever.

44.     Inapplicability of California Civil Code §384.  The parties agree that California Civil Code §384 is not applicable to this Settlement.  There will be no judgment for a specific monetary amount in this Court Action.  Instead, upon the satisfaction of all conditions of this Settlement Agreement, the parties will submit a stipulation for dismissal of this Court Action with prejudice.  In addition, the formula for

1  payments to Plaintiffs set forth in this Settlement Agreement is on a claims-made basis.

2  Therefore, the actual amount paid to Plaintiffs (exclusive of attorneys' fees and costs) in

3  connection with the Settlement necessarily will be equal to the amount of the timely

4  submitted and valid Claims, and there will be no residual amount to be paid to any non-

5  profit organization or foundation.  Plaintiffs and Plaintiffs' Counsel agree that they will

6  not take a contrary position before the Court.

7
       Executed this 23rd day of September, 2005, by and on behalf of the Parties:

8

9  ALTSHULER, BERZON, NUSSBAUM,     PAUL, HASTINGS, JANOFSKY &
    RUBIN & DEMAIN                WALKER LLP

10  McGUINN, HILLSMAN & PALEFSKY
  LAW OFFICE OF CHRISTINA

11  DJERNAES

12

13  By:_____     By:___/s/  Nancy L. Abell_____
         Michael Rubin                    Nancy L. Abell

14  Attorneys for Plaintiffs          Attorneys for Defendant Oracle

15

16  REPRESENTATIVE PLAINTIFFS    ORACLE CORPORATION

17
                            By:_____

18  _____          Juana Schurman
     MICHEL DRISCOLL        Who is authorized to execute on behalf of

19     Representative Plaintiff        Oracle Corporation

20

21  _____

22     BRIAN CONNELLY
   Representative Plaintiff

23

24

25  LEGAL_USW/7625052.3

26

27

28

1    payments to Plaintiffs set forth in this Settlement Agreement is on a claims-made basis.

2    Therefore, the actual amount paid to Plaintiffs in connection with the Settlement

3    necessarily will be equal to the amount of the timely submitted and valid Claims, and

4    there will be no residual amount to be paid to any non-profit organization or foundation.

5    Plaintiffs and Plaintiffs' Counsel agree that they will not take a contrary position before

6    the Court.

7
        Executed this 23rd day of September, 2005, by and on behalf of the Parties:
8

9    ALTSHULER, BERZON, NUSSBAUM,          PAUL, HASTINGS, JANOFSKY &
       RUBIN & DEMAIN                      WALKER LLP
10   McGUINN, HILLSMAN & PALEFSKY
     LAW OFFICE OF CHRISTINA
11   DJERNAES

12

13   By:_____          By:_____
              Michael Rubin                       Nancy L. Abell
14   Attorneys for Plaintiffs            Attorneys for Defendant Oracle

15

16   REPRESENTATIVE PLAINTIFFS           ORACLE CORPORATION

17
                                         By:_____
18   _____                   Juana Schurman
          MICHEL DRISCOLL                Who is authorized to execute on behalf of
19        Representative Plaintiff        Oracle Corporation

20

21   _____
          BRIAN CONNELLY
22        Representative Plaintiff

23

24

25   LEGAL_USW/7625052.3

26

27

28

-37-                          REVISED STIPULATION AND SETTLEMENT
                                              AGREEMENT
                              NO. 3-04-CV-02390 SI

1  payments to Plaintiffs set forth in this Settlement Agreement is on a claims-made basis.

2  Therefore, the actual amount paid to Plaintiffs in connection with the Settlement

3  necessarily will be equal to the amount of the timely submitted and valid Claims, and

4  there will be no residual amount to be paid to any non-profit organization or foundation.

5  Plaintiffs and Plaintiffs' Counsel agree that they will not take a contrary position before

6  the Court.

7        Executed this 23rd day of September, 2005, by and on behalf of the Parties:

8

9  ALTSHULER, BERZON, NUSSBAUM,          PAUL, HASTINGS, JANOFSKY &
      RUBIN & DEMAIN                        WALKER LLP
10 McGUINN, HILLSMAN & PALEFSKY
   LAW OFFICE OF CHRISTINA
11 DJERNAES

12

13 By:_____          By:_____
            Michael Rubin                        Nancy L. Abell
14 Attorneys for Plaintiffs               Attorneys for Defendant Oracle

15

16 REPRESENTATIVE PLAINTIFFS             ORACLE CORPORATION

17

18     MICHEL DRISCOLL                    By:_____
                                                Juana Schurman
19     Representative Plaintiff           Who is authorized to execute on behalf of
                                          Oracle Corporation

20

21 _____
       BRIAN CONNELLY
22     Representative Plaintiff

23

24

25 LEGAL_USW/7625052.3

26

27

28

-37-                    REVISED STIPULATION AND SETTLEMENT
                                        AGREEMENT
                                  NO. 3-04-CV-02390 SI

1  payments to Plaintiffs set forth in this Settlement Agreement is on a claims-made basis.

2  Therefore, the actual amount paid to Plaintiffs in connection with the Settlement

3  necessarily will be equal to the amount of the timely submitted and valid Claims, and

4  there will be no residual amount to be paid to any non-profit organization or foundation.

5  Plaintiffs and Plaintiffs' Counsel agree that they will not take a contrary position before

6  the Court.

7
8       Executed this 23rd day of September, 2005, by and on behalf of the Parties:

9  ALTSHULER, BERZON, NUSSBAUM,          PAUL, HASTINGS, JANOFSKY &
   RUBIN & DEMAIN                        WALKER LLP
10 McGUINN, HILLSMAN & PALEFSKY
   LAW OFFICE OF CHRISTINA
11 DJERNAES

12

13 By:_____            By:_____
           Michael Rubin                         Nancy L. Abell
14 Attorneys for Plaintiffs              Attorneys for Defendant Oracle

15

16 REPRESENTATIVE PLAINTIFFS             ORACLE CORPORATION

17                                       By:_____
18 _____                     Juana Schurman
       MICHEL DRISCOLL                   Who is authorized to execute on behalf of
19     Representative Plaintiff           Oracle Corporation

20

21 _____
       BRIAN CONNELLY
22     Representative Plaintiff

23

24

25 LEGAL_USW/7625052.3

26

27

28

-37-                    REVISED STIPULATION AND SETTLEMENT
                                           AGREEMENT
                                 NO. 3-04-CV-02390 SI

1  payments to Plaintiffs set forth in this Settlement Agreement is on a claims-made basis.

2  Therefore, the actual amount paid to Plaintiffs in connection with the Settlement

3  necessarily will be equal to the amount of the timely submitted and valid Claims, and

4  there will be no residual amount to be paid to any non-profit organization or foundation.

5  Plaintiffs and Plaintiffs' Counsel agree that they will not take a contrary position before

6  the Court.

7

Executed this 23rd day of September, 2005, by and on behalf of the Parties:

8

9  ALTSHULER, BERZON, NUSSBAUM,          PAUL, HASTINGS, JANOFSKY &
       RUBIN & DEMAIN                                WALKER LLP
10  McGUINN, HILLSMAN & PALEFSKY
     LAW OFFICE OF CHRISTINA
11  DJERNAES

12

13  By:_____          By:_____
              Michael Rubin                              Nancy L. Abell
14  Attorneys for Plaintiffs                   Attorneys for Defendant Oracle

15

16  REPRESENTATIVE PLAINTIFFS           ORACLE CORPORATION

17

18  _____             By: _____
            MICHEL DRISCOLL                           Juana Schurman
19        Representative Plaintiff            Who is authorized to execute on behalf of
                                                        Oracle Corporation
20

21  _____
            BRIAN CONNELLY
22        Representative Plaintiff

23

24

25  LEGAL_USW/7625052.3

26

27

28

-37-